THE CENTRAL RAILROAD & BANKING Co. *vs.* DICKSON.

The court did not err in refusing to grant a nonsuit.
April 8, 1889.

Nonsuit.    Railroads.    Negligence.    Before Judge
HARDEN.    City court of Savannah.    July term, 1888.

Samuel Dickson sued the railroad company for dam-
ages.   His evidence was to the following effect: He had
been employed as a switchman by defendant for over
two years.   It was his duty, as "lead-switchman," to
give all the signals to another called the "follow-switch-
man," who repeated the signals to the engineer.   On
the occasion in question, plaintiff was standing on the
last car on top of lumber with which it was loaded, and
was at his proper position.   After moving some dis-
tance, the train suddenly slackened speed without any
signal being given and without warning, and plaintiff,
being unprepared for the jerk, was thrown seven or
eight feet to the ground upon the track in front of the
car, which moved in part over him without touching
him, and he managed to escape without being touched

by the wheels. There was nothing for him to hold to on the lumber, and his duty required him to stand up. He was permanently injured in the back and his thumb was sprained, and he had much pain and suffering. He continued to work that day, at the request of defendant's yard-master, until another switchman relieved him. He was not able to get up the next day, and was confined at home from May until December, after which he attempted to work again at the same job until the next June, when he stopped because he was so badly off he could not work, his injuries having steadily grown worse. Before he was hurt he was a strong man, but now he is unable to work and is growing worse. He was earning $1.80 a day, and was something over thirty years old. While on the car, his back was to the engine and he was looking in the direction the train was moving. Other people were on the lumber, and they were jerked but did not fall off because they were not at the end. Such a train stops very frequently. The engine has steam-brakes. It always jerks the cars when it stops. He never knew the engine to stop without signals in such a case. It was not time for the train to stop when it slackened speed; it had not reached the proper point for a signal to stop. It was the engineer's duty not to stop unless the plaintiff gave him the signal. The yard-master ordered the stop ; he was not in charge of the train. Had plaintiff not been standing, he could not have given the signals well ; the engineer could not have seen him. Had he given the signal to stop, he would have been prepared for the jerk and able to guard against it. The follow-switchman was about midway of the train, facing plaintiff; he was not to give the signal until he received one from plaintiff, and he was looking at him. The train was suddenly jerked but not stopped. When plaintiff came out

from under the car, the yard-master came out and asked him if he was hurt, and he replied, "No, sir, only my back is hurt a little and my thumb sprained." The yard-master said, "It was my fault." The yard-master was higher in authority, but the lead-switchman was in charge of the train as to stopping and going ahead ; he should be on his feet to look out ; the yard-master had given orders to that effect ; of course when a man gets in that position he must know what he is going to do ; if a man is standing on the edge of a car, it does not take much of a jerk to knock him off when he is not expecting it. It would not be a dangerous position if he was on his guard ; he would have removed from it had he been notified they were going to stop. It is the duty of the lead-switchman first to receive all orders from the yard-master, but if that officer is not present, and there is work to be done, he is to know and go ahead and do it promptly, and it is not for any man to stop the train unless it is the yard-master, and then he should be told. If it become necessary, for a car or person on the track, to stop the train without the lead-switchman, he ought to know the position and see it as well as the engineer. The lumber on the car extended up flush with the end ; that was the best place to get down when the cars stopped. He could have stood farther back on the car.

The defendant introduced no testimony, but moved for a nonsuit, (1) because the plaintiff had not made out such a case as entitled him to recover ; (2) because the evidence showed that he was guilty of such negligence as would preclude him from recovery. This motion was overruled, and this is the ground of exception. A verdict was rendered for the plaintiff.

LAWTON & CUNNINGHAM, for plaintiff in error.

GARRARD & MELDRIM, *contra.*

BLECKLEY, Chief Justice.

The facts appear in the official report. The sole exception is, that the court erred in not granting a nonsuit. The one questionable fact on the merits was, whether Dickson stationed himself too far forward, in taking his position upon the car loaded with lumber. We think this was for the jury, and that the court did not err in referring it to them. The evidence makes it plain that there was no reason for Dickson to anticipate that the train would be stopped suddenly, or that any one would give a signal to stop but himself. Our conclusion is, that there was no error in refusing to grant a nonsuit.

Judgment affirmed.